# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

HOBART EUGENE COMBERGER, JR,         Case No. 1:13-cv-24
       Plaintiff,                          Dlott, J.
                                  Litkovitz, M.J.

vs

COMMISSIONER OF                    **REPORT AND**
SOCIAL SECURITY,                   **RECOMMENDATION**
       Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB).   This matter is before the Court on plaintiff's Statement

of Errors and Brief (Doc. 10), and the Commissioner's response in opposition.   (Doc. 15).

## I.  Procedural Background

Plaintiff filed an application for DIB in March 2010, alleging disability since October 20,

2009, due to a combination of cardiac, physical, and mental conditions.   Plaintiff's application

was denied initially and upon reconsideration.   Plaintiff, through counsel, requested and was

granted a *de novo* hearing before administrative law judge (ALJ) Curt Marceille.   Plaintiff,

plaintiff's wife and a vocational expert (VE) appeared and testified at the ALJ hearing.   On

March 29, 2012, the ALJ issued a decision denying plaintiff's DIB application.   Plaintiff's

request for review by the Appeals Council was denied, making the decision of the ALJ the final

administrative decision of the Commissioner.

I.  **Analysis**

A.  **Legal Framework for Disability Determinations**

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.    42 U.S.C. § 423(d)(1)(A).

The impairment must render the claimant unable to engage in the work previously performed or

in any other substantial gainful employment that exists in the national economy.    42 U.S.C. §

423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).    The claimant has the burden of proof at the first four

steps of the sequential evaluation process.    *Id.*; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541,

548 (6th Cir. 2004).   Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.   *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

**B.   The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2014.   (Ex. 6D:1).

2. The [plaintiff] did not engage in substantial gainful activity at any time after October 20, 2009, the alleged onset date.   (20 C.F.R. 404.1571 *et seq.*).

3. The [plaintiff] exhibits the signs and symptoms of the following severe combination of impairments: chronic obstructive pulmonary disease [COPD]; hypertension; ischemic cardiomyopathy (due to coronary artery disease) s/p one-vessel stenting and implantation of an ICD [implantable cardioverter defibrillator] in 2001 and an additional stenting procedure in December 2008; gastroesophageal reflux disease; adult onset type II (non-insulin-dependent) diabetes mellitus; obesity; depression; and anxiety.   (20 CFR 404.1520(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.   (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] retains the residual functional capacity to perform the exertional demands of light work. 20 CFR 404.1567(b).   He should not be required to engage in overhead work.   He should not be exposed to hazards (e.g., unprotected heights, moving machinery) or to extremes in temperature and humidity.   He should not be exposed to concentrated amounts of environmental irritants.   The claimant retains the capacity to tolerate occasional interaction with others on a regular and continuing basis.

6. The [plaintiff] does not retain the capacity to perform the exertional demands of his past relevant work as a *general laborer* (DOT 559.667-014, medium unskilled work with an SVP level of 2).   (Ex. 23E).   (20 CFR 404.1565).

3

7. The [plaintiff] was born [in] . . . 1962 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The [plaintiff]'s age category did not change prior to the issuance of this decision. (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English. (Ex. 2E:3). (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform. (20 CFR 404.1569 and 404.1569(a)).[1]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from October 20, 2009, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 23-32).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*,

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

---

[1]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 26,100 unskilled, light jobs in the regional economy, citing as examples of such jobs assembler, hand sorter/router, and inspector/hand packager, and 17,900 unskilled, sedentary jobs in the regional economy, citing as examples of such jobs assembler, dowel inspector, or bench packager. (Tr. 32, 65).

4

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545–46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the record evidence supports a finding that plaintiff meets or medically equals Listings 12.04 and 12.06 and the ALJ erred in finding otherwise; (2) the ALJ erred in formulating plaintiff's RFC; (3) the ALJ erroneously discounted plaintiff's credibility; and (4) the ALJ presented improper hypotheticals to the VE at the ALJ hearing. (Doc. 10). For the following reasons, the undersigned finds that the ALJ's decision is supported by substantial evidence and recommends that his decision be affirmed in its entirety.

5

1. <u>The ALJ did not err in finding that plaintiff's psychiatric impairments did not meet the criteria for Listing 12.04 or Listing 12.06</u>.

Plaintiff contends the ALJ erred in failing to find that he meets or medically equals Listings 12.04 and 12.06.

Listing 12.04 governs affective disorders, such as depressive disorders, and Listing 12.06 governs anxiety-related disorders. The required level of severity for these Listings is met when both the "paragraph A" and "paragraph B" criteria of the Listings are satisfied, or when the criteria of "paragraph C" are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06.

To satisfy the "paragraph A" criteria of Listing 12.04, the mental impairment must result in medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:
    a. Anhedonia or pervasive loss of interest in almost all activities; or
    b. Appetite disturbance with change in weight; or
    c. Sleep disturbance; or
    d. Psychomotor agitation or retardation; or
    e. Decreased energy; or
    f. Feelings of guilt or worthlessness; or
    g. Difficulty concentrating or thinking; or
    h. Thoughts of suicide; or
    i. Hallucinations, delusions, or paranoid thinking; or
2. Manic syndrome characterized by at least three of the following:
    a. Hyperactivity; or
    b. Pressure of speech; or
    c. Flight of ideas; or
    d. Inflated self-esteem; or
    e. Decreased need for sleep; or
    f. Easy distractibility; or
    g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
    h. Hallucinations, delusions, or paranoid thinking; or
3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. To satisfy the "paragraph A" criteria of Listing

6

12.06, there must be medically documented findings of at least one of the following:

> 1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
>> a. Motor tension; or
>> b. Autonomic hyperactivity; or
>> c. Apprehensive expectation; or
>> d. Vigilance and scanning; or
> 2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
> 3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
> 4. Recurrent obsessions or compulsions which are a source of marked distress; or
> 5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.

To satisfy the "paragraph B" criteria for both Listing 12.04 and 12.06, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. *Id.*, § 12.00 (C). Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. *Id.*, § 12.00(C)(4).

To satisfy the "paragraph C" criteria of Listing 12.04, there must be a medically documented history of a chronic affective disorder of at least two years' duration which causes more than minimal limitation on the plaintiff's ability to do basic work activities accompanied by one of the following: repeated episodes of decompensation, each of extended duration; a residual disease process that results in such marginal adjustment that a minimal increase in mental

demands would be predicted to cause the plaintiff to decompensate; or a history of one or more years of the plaintiff being incapable of functioning outside of a highly supportive living arrangement. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. To satisfy the "paragraph C" criteria of Listing 12.06, the mental impairment must result in plaintiff's "complete inability to function independently outside the area of [her] home." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.

The ALJ determined that plaintiff's severe mental impairments, depression and anxiety, considered singly and in combination, do not meet or medically equal the criteria of either Listing 12.04 or 12.06 because they do not cause at least two "marked" limitations and, thus, the "paragraph B" criteria are not satisfied. (Tr. 25-26). The ALJ found that plaintiff has mild limitations in activities of daily living; moderate limitations in social functioning; mild limitations in concentration, persistence, or pace; and has experienced no episodes of decompensation of extended duration. (*Id.*). The ALJ also considered the "paragraph C" criteria and found that the record evidence failed to establish that plaintiff: suffered repeated episodes of decompensation of an extended duration; would experience an episode of decompensation in the event of a minimal increase in mental demands or change in environment; required a highly supportive living arrangement; or exhibited a complete inability to function outside his home. (Tr. 26).

Plaintiff's argument is limited to his assertion that he meets the criteria for paragraphs A and B of the Listings. In contrast, the ALJ's decision includes findings with respect to paragraphs B and C only. Given the limited scope of the ALJ's decision, the Court's analysis is

8

similarly limited to paragraph B and C criteria.[2]

Plaintiff contends that his mental impairments "result in 'marked' functional limitations in the categories of daily living and social functioning." (Doc. 10 at 18). Plaintiff maintains that the ALJ erred in analyzing his functional limitations in these categories by looking at "*all*" of his activities and limitations instead of focusing on the "*overall* degree of interference [caused by his impairments] in these areas of functioning." (*Id*. at 19) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00C) (emphasis in original).[3] Plaintiff asserts that his mental impairments place such an *overall* degree of interference with his activities of daily living and social functioning as to cause "marked" limitations. (*Id*. at 19). The only evidence plaintiff cites to support his assertion that he has these "marked" limitations is the testimony he and his wife gave at the ALJ hearing.[4] (*Id*.).

---

[2]Regardless of whether plaintiff satisfies the criteria for paragraph A, to meet Listing 12.04 and Listing 12.06, he must also satisfy the criteria of either paragraph B or C. Consequently, the Court's scope is properly limited to the ALJ's findings.

[3]Paragraph C of §12.00 provides the following regarding "marked" limitations in activities of daily living and social functioning:

> We do not define "marked" by a specific number of activities of daily living in which functioning is impaired, but by *the nature and overall degree of interference with function*. For example, if you do a wide range of activities of daily living, we may still find that you have a marked limitation in your daily activities if you have serious difficulty performing them without direct supervision, or in a suitable manner, or on a consistent, useful, routine basis, or without undue interruptions or distractions.
>
> ***
>
> We do not define "marked" by a specific number of different behaviors in which social functioning is impaired, but by *the nature and overall degree of interference with function*. For example, if you are highly antagonistic, uncooperative, or hostile but are tolerated by local storekeepers, we may nevertheless find that you have a marked limitation in social functioning because that behavior is not acceptable in other social contexts.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00C (emphasis added).

[4]Plaintiff and his wife testified that plaintiff is unable to engage in social functions and even when he attempts to attend family gatherings, he only does so for a few minutes and then must leave due to his anxiety. *See* Tr. 58, 63.

Plaintiff has the burden at Step Three of the sequential analysis of putting forth evidence establishing that he meets or equals a listing.   *See* 20 C.F.R. § 404.1520(a)(4)(iii).   It is therefore incumbent upon plaintiff to put forth medical evidence establishing that he meets all of the requirements of Listings 12.04 and 12.06 to meet this burden.   *See Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990).   Plaintiff has failed to identify any medical evidence supporting a finding that he meets the criteria of either Listing 12.04 or 12.06, and plaintiff relies solely on his and his wife's testimony.   As discussed further *infra*, the ALJ's decision to discount this testimony is supported by substantial evidence.   Because plaintiff has not identified any other evidence which establishes that he meets the "paragraph B" criteria of these listings, he has not met his Step Four burden.   Regardless, the ALJ's finding that plaintiff does not meet or medically equal either Listing 12.04 or 12.06 is otherwise substantially supported by the evidence.

First, the medical opinion evidence of record supports the ALJ's determination that plaintiff does not have more than "mild" limitations in activities of daily living.   Plaintiff reported to Norman L. Berg, Ph.D., the consultative examining psychologist, that he is able to manage his self-grooming and goes shopping with his wife.   (Tr. 719).   In an April 2010 Function Report, plaintiff reported being able to mow the grass using a riding mower once a week; go shopping (at stores and online); and go to church weekly.   (Tr. 187-88).   Dr. Berg opined that plaintiff had no limitations in his abilities to understand, remember and follow simple directions; no limitations in his ability to maintain attention and concentration; mild limitations in his abilities to cope with routine job stress; and mild limitations in his ability to relate adequately to others in a work setting.   (Tr. 720).   Further, state agency reviewing psychologist

Bruce Goldsmith, Ph.D., opined that plaintiff had only mild limitations in his activities of daily living.  (Tr. 732).  Accordingly, there is substantial record evidence supporting the ALJ's finding that plaintiff's activities of daily living are only mildly impaired.[5]

Second, the ALJ's finding that plaintiff has no "more than a moderate limitation in 'social functioning'" is substantially supported by the evidence from Dr. Berg and Dr. Goldsmith and other evidence of record.  Dr. Berg opined that plaintiff was only "mildly impaired in his ability to relate to others including fellow workers and supervisors."  (Tr. 720).  Dr. Berg's opinion was based on his observation that plaintiff was "mildly anxious" during the examination and plaintiff's reports of becoming "somewhat anxious" around others.  (*Id.*).  Dr. Goldsmith also opined based on his review of the evidence that plaintiff had mild limitations in social functioning.  (Tr. 732).  As this is the only significant medical evidence regarding plaintiff's mental health impairments,[6] the ALJ could have reasonably relied on this evidence alone and determined that plaintiff had only mild limitations in this area.  Yet, the ALJ gave some weight to plaintiff's subjective reports of anxiety and found him to have moderate functional limitations in social functioning.  The ALJ's decision in this regard is substantially supported as the evidence of record demonstrates that plaintiff's subjective reports of being unable to engage in

---

[5]Insofar as plaintiff asserts the ALJ erred in noting that plaintiff's alleged difficulties in bathing and carrying out other daily activities was possibly attributable to his physical, as opposed to his mental, impairments, plaintiff fails to explain or support this claim with developed argument or by reference to any authority.  *See* Doc. 10 at 19. Nevertheless, the Court finds no error in this regard given the other substantial record evidence cited above supporting the ALJ's decision.  The Court also notes that plaintiff has cited to no medical evidence whatsoever demonstrating that he has functional limitations resulting from his mental impairments beyond those found by the ALJ.

[6]There are notations in other treatment records regarding plaintiff's anxiety diagnosis, *see*, *e.g.*, Tr. 760, 763, 766, but these are generally limited to the diagnosis itself.  However, on November 15, 2011, plaintiff's treating physician, Teresa Wright, PA-C, noted that plaintiff did not present with "unusual anxiety or evidence of depression."  (Tr. 785).  Further, plaintiff's treating cardiologist, Daniel A. Tramuta, M.D., reported in March and September 2010, that plaintiff had "[n]o anxiety, no panic, no insomnia, no depression."  (Tr. 801, 806).

11

any social gathering, even a family dinner (Tr. 58, 63), is inconsistent with his reports of attending church and living with his relatives.  *See* Tr. 184, 188.

Third, the record substantially supports the ALJ's finding that plaintiff has mild limitations in maintaining concentration, persistence or pace.  Dr. Berg observed that plaintiff was able to work at a moderate pace during the mental status examination and was able to remember items and to maintain his concentration.  (Tr. 717-18).  Further, Dr. Goldsmith opined that plaintiff was only mildly limited in his ability to maintain concentration, persistence or pace.  (Tr. 732).  Notably, plaintiff does not challenge the ALJ's finding in this regard.

Fourth, plaintiff does not challenge the ALJ's determination that he has not experienced any episodes of decompensation of extended duration.  As there is no evidence from which the Court can discern that the ALJ's finding was erroneous, his decision in this regard is substantially supported.  Likewise, plaintiff does not raise any argument with respect to the ALJ's discussion of the "paragraph C" criteria for Listings 12.04 and 12.06.  As the only record evidence on this is Dr. Goldsmith's opinion that the medical evidence does not establish the presence of the "paragraph C" criteria (Tr. 733), the ALJ's determination that plaintiff's mental impairments do not meet the listings in this regard is supported by substantial evidence.  *See* Tr. 26.

In consideration of the above, the ALJ's determination that plaintiff's psychological impairments do not meet Listings 12.04 or 12.06 is supported by substantial evidence. Plaintiff's first assignment of error should be overruled.

2. The ALJ's RFC formulation is supported by substantial evidence of record.

The ALJ found that plaintiff had the RFC "to perform the exertional demands of light work."[7] (Tr. 26, citing 20 C.F.R. § 404.1567(b)). The ALJ provided additional limitations, including restricting plaintiff's exposure to hazards and environmental irritants, and limiting him to "occasional interaction with others on a regular and continuing basis." (Tr. 26). The ALJ did not provide any sitting or standing accommodation in the RFC.

Plaintiff argues the RFC formulation lacks substantial support because record evidence from Dr. Tramuta (his treating cardiologist) establishes that he cannot repetitively lift 20 pounds thoughout an eight-hour workday. (Doc. 10 at 21, citing Tr. 745-47). Plaintiff also asserts the hearing testimony he and his wife provided establishes that he has sitting and standing limitations not accommodated by the ALJ that preclude him from being able to perform "light work." (Doc. 10 at 21). The undersigned finds that the ALJ properly accommodated plaintiff's established functional limitations, including those provided by Dr. Tramuta, and that the RFC formulation is supported by substantial evidence.

Plaintiff's argument appears to be based on a misreading of both the demands of "light work" and Dr. Tramuta's restriction. Dr. Tramuta began treating plaintiff in February 2001 after

---

[7]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

plaintiff's first cardiac event.[8]  *See* Tr. 343-44.  On September 17, 2010, Dr. Tramuta completed

a one-page "Social Security Disability Opinion Questionnaire."  (Tr. 747).  Dr. Tramuta

reported that he treats plaintiff for coronary artery disease with myocardial infarction status post

stenting and ventricular tachycardia status post defibrillator placement.  (*Id.*).  Dr. Tramuta

opined that plaintiff "cannot lift > 20 lbs. repetitively over an eight hour work day as that stress

could promote an MI [myocardial infarction] or a tachycardia that could result in defibrillation."

(*Id.*).

State agency physician, W. Jerry McCloud, M.D., reviewed the file in June 2010 and

completed a physical residual functional capacity assessment.  (Tr. 736-43).  He opined that

plaintiff could lift and/or carry and push and/or pull up to 20 pounds occasionally and 10 pounds

frequently; could stand and/or walk about six hours in an eight-hour workday; and could sit for

about six hours in an eight-hour workday.[9]  (Tr. 737).  William Bolz, M.D., another state

agency reviewing physician, affirmed Dr. McCloud's assessment on September 20, 2010.  (Tr.

748).

The ALJ gave "great weight" to the opinions of Dr. McCloud and Dr. Bolz that plaintiff

was capable of performing "light work" as their opinions were based on a reasonable assessment

of the medical evidence, including Dr. Tramuta's opinion.  (Tr. 30).  Implicit in the ALJ's

finding that plaintiff is limited to performing "light work" is the recognition that plaintiff cannot

engage in work requiring him to lift more than 20 pounds on an occasional basis.  As stated

---

[8]Plaintiff has a history of inferior wall myocardial infarction and was hospitalized for this condition in February 2001 (Tr. 343-44); he underwent an ICD replacement in July 2005 (Tr. 338); he was hospitalized in October 2006 for inferolatera1 defect consistent with ischemia (Tr. 275-329); and he was hospitalized in December 2008 for defibrillator shocks and revision surgery.  (Tr. 363-88).
[9]Dr. McCloud also found that plaintiff can never climb ladders, ropes or scaffolds and must avoid concentrated exposure to extreme heat; humidity; fumes, odors, dusts, gases, poor ventilation, etc.; and hazards (machinery, heights, etc.) due to his defibrillator placement.  (Tr. 738, 740).

*supra*, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Light work" as defined by the Social Security regulations has "the same meaning as [it has] in the Dictionary of Occupational Title. . . ." 20 C.F.R. § 404.1567. The Dictionary of Occupational Titles defines "light work" as "[e]xerting up to 20 pounds of force *occasionally*, and/or up to 10 pounds of force frequently. . . ." *See* http://www.occupationalinfo.org/appenxc_1.html (last visited February 3, 2014) (emphasis added). The ALJ's RFC for "light work" is entirely in line with Dr. Tramuta's opinion that plaintiff "cannot lift > 20 lbs repetitively. . . ." (Tr. 747).[10] Plaintiff's assertion to the contrary is based on a misreading of Dr. Tramuta's opinion. Plaintiff maintains that Dr. Tramuta opined that "he did not possess the ability to [lift 20 pounds] repetitively. . . ." (Doc. 10 at 21). However, Dr. Tramuta clearly opined that plaintiff could not lift *greater* than 20 pounds repetitively. (Tr. 747). Implicit in this restriction is Dr. Tramuta's opinion that plaintiff *can* repetitively lift up to 20 pounds, but no more, in an eight hour work day. Even if plaintiff were unable to lift 20 pounds repetitively, the "light work" imposed by the ALJ's RFC requires repetitive lifting of up to 10 pounds, not 20 pounds. As the ALJ's RFC for "light work" restricts plaintiff to lifting no more than 20 pounds on an occasional basis, it is consistent with Dr. Tramuta's opinion. Moreover, it is substantially supported by the medical opinion evidence of record from Dr. McCloud and Dr. Bolz. Accordingly, the ALJ did not err in finding that plaintiff is capable of performing a reduced range of "light work."

Plaintiff also maintains the ALJ's RFC formulation improperly rejected the testimony he and his wife gave at the ALJ hearing. Plaintiff specifies that this testimony establishes that

---

[10]The ALJ's RFC for "light work" is also supported by the opinion of Teresa Wright, a physician's assistant with HealthSource of Ohio, who opined in September 2010 that plaintiff is unable to lift greater than 20 pounds.

plaintiff is unable to tolerate a "good deal of walking or standing, or … sitting most of the time. . . ." (Doc. 10 at 21).[11]  To the extent plaintiff is challenging the ALJ's credibility determination, this is addressed further in connection with plaintiff's third assignment of error.   Insofar as plaintiff asserts the ALJ erred by not including a sitting or standing accommodation in formulating the RFC based solely on plaintiff's subjective statements, this assertion is unavailing.   There is no medical evidence in the record whatsoever documenting that plaintiff is restricted in his ability to sit or stand that would necessitate accommodating this purported limitation.   Moreover, as determined by the ALJ, plaintiff's examination findings do not support such a limitation.   *See* Tr. 29, citing Tr. 443 (plaintiff reported no muscle or joint pain to Dr. Tramuta in March 2010); Tr. 484 (plaintiff had normal respiratory findings in April 2010); Tr. 631 (plaintiff exhibited normal gait and muscle strength during a May 2010 examination).   Dr. McCloud also noted findings of normal gait and muscle strength in the record in forming his RFC assessment; Dr. Bolz opined that the medical evidence of record did not support any standing or walking limitations.   *See* Tr. 737, 748.   Given the absence of any medical evidence supporting plaintiff's assertion that he is limited in his standing and sitting abilities so as to be disabled and the objective, clinical, and opinion medical evidence which demonstrates otherwise, the undersigned finds the ALJ did not err by not including any sitting or standing limitation in formulating plaintiff's RFC.   Accordingly, plaintiff's second assignment of error should be overruled.

---

*See* Tr. 758.
   [11]Though plaintiff appears to be citing to portions of the ALJ hearing testimony, he does not provide any citation thereto.   *See* Doc. 10 at 21.

3. The ALJ did not err in discounting the credibility of plaintiff and plaintiff's wife.

For his third assignment of error, plaintiff asserts the ALJ erroneously discounted plaintiff's hearing testimony. Plaintiff maintains the record evidence demonstrates that he has "chronic and uncontrollable COPD and diabetes mellitus [and] has been diagnosed with anxiety and panic disorder" as well as a history of cardiac problems. (Doc. 10 at 16-17, citing Tr. 442-521, 569-81, 722-35). Plaintiff asserts that this record evidence is substantial support for his testimony that he has extreme limitations in his physical activity as he "runs out of air" when engaging in simple activities of daily living and has extreme limitations in his ability to interact with others, leave his home, or socialize in general. (Doc. 10 at 17, citing Tr. 45-46, 58-63). Plaintiff contends the ALJ should have credited the testimony he and his wife gave at the hearing and, consequently, determined that he was incapable of engaging in substantial gainful employment. (Doc. 10 at 17).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

17

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers,* 486 F.3d at 247. Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

Substantial evidence supports the ALJ's determination that the statements of plaintiff and his wife regarding the severity of his physical and mental impairments are not fully credible. The ALJ noted throughout his decision the various ways in which the statements of plaintiff and his wife regarding the extent of his limitations were inconsistent in determining to discount their credibility. First, the ALJ identified that while plaintiff reported in an April 23, 2010 Function Report that his 2001 heart attack "changed [his] life big time[,]" (Tr. 191), he continued working at his job until October 2009 when he was no longer able to perform the lifting requirements (forty pounds) of the job. (Tr. 28, citing Tr. 704, 713, 717). Plaintiff's ability to continue working for eight years after the heart attack provides substantial support for the ALJ's decision to not credit his statements that he suffers from disabling symptoms due to his cardiac impairment.

Second, the ALJ noted that plaintiff, by virtue of receiving unemployment benefits until October 2011, was certifying that he was "ready, willing, and able to work" and had been

applying for work. (Tr. 28, citing Tr. 44). The Sixth Circuit has held that the receipt of

unemployment benefits is "inherently inconsistent" with seeking disability benefits and that this

inconsistency is properly considered by the ALJ in making a credibility determination. *See*

*Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004). *But see Schmidt v.*

*Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) (collecting unemployment compensation does not

necessarily mean an individual is capable of substantial gainful activity). The ALJ therefore

properly considered plaintiff's receipt of unemployment benefits and plaintiff's testimony that he

made repeated representations until October 2011 that he was able to work. (Tr. 28). This

evidence substantially supports the ALJ's finding that plaintiff's statements that he has been

incapable of work since October 2009 are not fully credible.

Third, the ALJ noted that plaintiff's testimony of disabling impairments was not

supported by the objective, clinical, and medical opinion evidence of record. (Tr. 28). For

example, the ALJ specified that despite plaintiff's testimony of difficulty breathing with activity,

lower extremity pain and numbness, generalized fatigue, and disabling mental impairments (Tr.

45-46, 48, 58), plaintiff did not report any of these to his treating cardiologist, Dr. Tramuta, in

March 2010. (Tr. 28, citing 443). Further supporting the ALJ's determination in this regard are

Dr. Tramuta's examination findings that plaintiff had normal respiratory effort, and no anxiety,

panic, or depression; and plaintiff's reports that he was regularly walking for exercise. (Tr.

443-44). The other evidence cited by the ALJ further supports his finding that the hearing

testimony was inconsistent with significant clinical evidence. *See*, *e.g.*, Tr. 484 (in May 2010

plaintiff had normal respiratory effort on exam); Tr. 631 (on May 17, 2010, plaintiff had clear

lungs, normal gait and muscle strength); Tr. 715-21 (during his consultative psychiatric

examination, plaintiff presented with only mild anxiety and Dr. Berg found that plaintiff had no more than mild limitations in his ability to interact with others). This evidence provides substantial support for the ALJ's determination that plaintiff's statements regarding his physical and mental limitations are inconsistent with the medical evidence of record and, thus, less than fully credible.

Last, the ALJ noted that plaintiff's testimony was inconsistent with prior reports made to the Social Security Administration and his statements to Dr. Berg. The ALJ specified that plaintiff's testimony that he could not take a shower without losing his breath or attend social gatherings due to extreme panic attacks was inconsistent with his statements that he mowed the grass weekly, went shopping, and attended church weekly. (Tr. 187-88). The ALJ also noted that plaintiff reported to Dr. Berg that the day before the evaluation, May 28, 2010, plaintiff mowed his father-in-law's yard and went to the store with his wife. (Tr. 719). The inconsistencies between plaintiff's hearing testimony and prior statements regarding his activities of daily living provide substantial support for the ALJ's credibility finding.

In light of the evidence considered by the ALJ, the inconsistencies between the testimony of plaintiff, plaintiff's wife, and the other evidence of record, and the deference due to the ALJ in making credibility determinations, the undersigned concludes the ALJ's credibility finding is supported by substantial evidence and should be affirmed

4. The ALJ did not present improper hypothetical questions to the VE at the hearing.

Plaintiff's final assignment of error asserts that the ALJ's Step 5 finding is erroneous because he failed to include supported limitations. At the hearing, the ALJ posed a hypothetical to the VE regarding plaintiff's physical RFC for a limited range of light work. Plaintiff contends

the ALJ erred by not including sitting and standing limitations, reaching limitations, or any

limitations related to his anxiety and panic disorder. (Doc. 10 at 22). Plaintiff further contends

the ALJ erred because his hypothetical questions to the VE failed to include Dr. Tramuta's lifting

restriction.[12] (Id.).

At Step 5 of the sequential evaluation process, the burden shifts to the Commissioner "to

identify a significant number of jobs in the economy that accommodate the claimant's residual

functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r of Soc.*

*Sec.,* 336 F.3d 469, 474 (6th Cir. 2003). The Commissioner may meet his burden through

reliance on a vocational expert's testimony in response to a hypothetical question. To constitute

substantial evidence in support of the Commissioner's burden, the hypothetical question posed to

the vocational expert must accurately reflect the claimant's physical and mental limitations. *See*

*Ealy v. Comm'r of Soc. Sec.* 594 F.3d 504, 516 (6th Cir. 2010).

Plaintiff's statement of error is essentially a repeat of his RFC arguments. The Court

will not revisit plaintiff's reiterated arguments in light of the above finding that the ALJ's RFC

finding is supported by substantial evidence. Notably, plaintiff has not cited to any medical

evidence supporting his claims that he has additional physical and mental limitations beyond

those included in the ALJ's hypothetical question to the VE. To the extent plaintiff asserts his

subjective statements support a finding of additional limitations, as discussed above, the ALJ's

finding that plaintiff is not fully credible is substantially supported by the record. Accordingly,

the undersigned finds that the ALJ included appropriate limitations in the hypothetical question

---

[12]The ALJ presented two hypothetical questions to the VE: one which reflected an individual with the ability to engage in "light work" and the other reflecting an individual with the ability to engage in only "sedentary work." *See* Tr. 64-65. As the ALJ assigned plaintiff an RFC for "light work" only, the Court declines to address plaintiff's argument that the "sedentary work" hypothetical question was deficient. *See* Doc. 10 at 23.

21

to the VE given the evidence of record.   Plaintiff's final assignment of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the

docket of the Court.

Date: _2/3/14_

Karen L. Litkovitz
United States Magistrate Judge

22

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

HOBART EUGENE COMBERGER, JR,           Case No. 1:13-cv-24
       Plaintiff,                         Dlott, J.
                                        Litkovitz, M.J.

       vs

COMMISSIONER OF
SOCIAL SECURITY,
       Defendant.

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.   If the

Report and Recommendation is based in whole or in part upon matters occurring on the record at

an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or

such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless

the assigned District Judge otherwise directs.   A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

23